■ HARRIS DILLON, Respondent, v. SOCONY MOBIL OIL COMPANY, INC., Appellant.— Appeal by defendant from a judgment of the Supreme Court in Broome County in favor of plaintiff based upon a jury verdict in the sum of $5,000 for personal injuries, and from an order denying defendant's motion for a new trial. Plaintiff, Sealer of Weights and Measures for Broome County, was a business invitee upon the premises of defendant and was engaged in calibrating the meters used by defendant for measuring petroleum products. The meters were located on a loading platform constructed of steel with a grated flooring approximately four feet above ground level. Pipes came up through this flooring which were used for loading tank trucks which were driven alongside the loading platform. On the day of plaintiff's accident a tank truck had been placed alongside the loading platform. It had a cat-walk along the side which was approximately the same distance from the ground as the loading platform, and was about 18 inches away from the loading platform. The flooring of this loading platform consisted of steel grating, known as subway grating, which was fabricated from upright strips of steel, with diamond-shaped openings between the strips. Along the edge of this platform next to which a truck would be placed, this fabricated flooring was cut off, leaving sharp edges of steel. In the performance of his duties plaintiff was obliged to step from the catwalk of the truck to the loading platform, and in so doing he placed his right foot upon the flat surface of the flooring of the platform and his foot slipped forward, causing him to fall. His left leg came in contact with the edges of the flooring, and he sustained injuries to the left leg. Plaintiff grabbed a pipe which protruded above the platform, thereby preventing his falling to the ground, and he was able to regain the platform. Plaintiff testified that there was oil or an oily substance on the platform which caused his right foot to slip. Plaintiff alleged three theories of negligence, — permitting oil to be upon the surface of the platform, lack of handrails, and the sharp protruding edges of the steel flooring. Defendant called an expert witness who expressed an opinion that the use of this type of flooring on such a loading facility was in accordance with the customs and the usages and the best engineering and construction practices known to the trade, in 1956. In purported rebuttal plaintiff called an architectural engineer and attempted to qualify him as an expert witness. The witness had had experience in connection with factories where fabricated steel was used around elevated tanks, and had had experience with concrete loading platforms in connection with

manufacturing plants. It appeared, however, that he had never seen the loading facility involved in this case, and had had no experience whatever in designing, constructing, inspecting or even observing, loading platforms or loading facilities used in connection with the petroleum industry. Over objection and exception he was permitted to answer a long hypothetical question to the effect that he "believed" that the use of this subway grating in the way it was used was not within good, sound engineering practice and in accordance with the customs and usages in the area. He was then permitted to explain his opinion and described the sheared-off ends as sharp, and expressed his opinion that they should have been covered up with a band welded to the ends of the bar, and "probably the top of that band rounded a little bit so that it wasn't sharp and wouldn't cut anybody." Thus in effect he was permitted to testify that the protruding edges were dangerous and their use negligence. There was much discussion between the court and counsel, some if it in the presence of the jury, concerning the admissibility of this evidence, which served only to emphasize it. The trial court expressed misgivings as to the admissibility of this evidence, but upon the insistence of plaintiff's counsel finally received it, stating that it was the responsibility of plaintiff's counsel. We think that this was error, first because the witness lacked proper qualifications as an expert in this particular field, and secondly because it is without dispute in this record that the edges of this fabricated flooring were not the cause of plaintiff's fall, and hence the evidence was not relevant or material. Plaintiff testified that his right foot was upon the flat surface of the platform when it slipped and caused him to fall. There is no evidence that the edge of the platform had anything whatever to do with his fall, though it may have aggravated his injuries. Respondent's brief concedes this. For the same reason we do not think that the question of defendant's negligence in connection with the edge of the flooring should have been submitted to the jury. The court submitted the case to the jury on all three theories of negligence mentioned above. A general verdict was returned and there is no way of knowing which theory the jury adopted. "Where a general verdict is rendered in a liability case submitted to the jury on multiple theories of liability, if one of them is legally untenable, the verdict may not stand." (*Thomas* v. *Central Greyhound Lines,* 6 A D 2d 649, 653.) Judgment and order reversed, on the facts and the law, and a new trial ordered, with costs to abide the event. Foster, P. J., Bergan, Coon, Gibson and Herlihy, JJ., concur.